UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Victor Bernard Jones, | Case No. 22-cv-1490 (ECT/DJF) |
| Petitioner, | |
| v. | REPORT AND RECOMMENDATION |
| B. Eischen, *FPC Duluth, Warden*, | |
| Respondent. | |

## INTRODUCTION

This matter is before the Court on Petitioner Victor Bernard Jones' Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 ("Petition") (ECF No. 1).[1] Finding no hearing necessary, the Court recommends Mr. Jones's Petition be denied and this matter be dismissed without prejudice.[2]

## BACKGROUND

### A.  Mr. Jones's Incarceration

When Mr. Jones filed his Petition in June 2022, he was incarcerated at the Federal Prison Camp in Duluth, Minnesota (ECF No. 1 at 1).[3] Mr. Jones transitioned to home confinement on August 29, 2023. (ECF Nos. 14 at 1, 15 ¶ 5 and 15-3 (Ex. C) at 1.) He is serving an aggregated 235-month term of imprisonment for distribution of heroin within 1,000 feet of a protected location

---

[1] The undersigned United States Magistrate Judge considers this matter pursuant to a general referral in accordance with the provisions of 28 U.S.C. § 636 and Local Rule 72.1.

[2] As set forth below, there are no material facts in dispute. Accordingly, an evidentiary hearing is unnecessary. *Toney v. Gammon*, 79 F.3d 693, 697 (8th Cir. 1996).

[3] For ease of reference, the Court cites to the ECF pagination throughout this Report and Recommendation.

after a prior conviction for a felony drug offense, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 851 and 860. (ECF Nos. 9 ¶ 4 and 9-1 (Ex. A) at 2-3). Mr. Jones's statutory projected release date is August 26, 2026. (ECF No. 15-2 (Ex. B) at 3.) His projected release date, based on his First Step Act Time Credits and successful completion of the Residential Drug Abuse Program, is August 26, 2024. (ECF Nos. 15 ¶ 4 and 15-2 (Ex. B) at 2.)

**B.     The First Step Act**

In December 2018, the First Step Act ("FSA") became law. *See* 18 U.S.C. § 3632. The FSA contains various carceral reforms, including the potential for certain federal inmates to reduce the length of their sentences by accumulating "Time Credits." *See id.* Specifically, the FSA provides, "[a] prisoner, except for an ineligible prisoner under subparagraph (D), who successfully completes evidence-based recidivism reduction programming or productive activities, shall earn time credits" at a rate described by statute. 18 U.S.C. § 3632(d)(4). Inmates can earn ten days of Time Credits for every thirty days of successful participation in evidence-based recidivism reduction ("EBRR") programming or productive activities ("PAs"), and eligible inmates with a low risk of recidivism can earn an additional five days of FSA Time Credits for every thirty days of successful participation. *Id.* Based on his recidivism risk, Mr. Jones is eligible to earn 15 days of FSA Time Credits for every 30-day period of successful programming. (ECF Nos. 23 ¶ 21 and 23-5 (Ex. E) at 1.)

An eligible inmate generally is not considered to be "successfully participating" in EBRR programming or PAs in situations including, but not limited to: (i) placement in a Special Housing Unit; (ii) designation status outside the institution (*e.g.*, for extended medical placement in a hospital or outside institution, an escorted trip, a furlough, etc.); (iii) temporary transfer to the custody of another Federal or non–Federal government agency (*e.g.*, on state or Federal writ,

2

transfer to state custody for service of sentence, etc.); (iv) placement in mental health/psychiatric holds; or (v) "opting out" (choosing not to participate in the EBRR programs or PAs that the Bureau has recommended). 28 C.F.R. § 523.41(c)(4)(i)-(v). Moreover, an inmate may lose FSA Time Credits "for violation of the requirements or rules of an EBRR Program or PA." 28 C.F.R. § 523.43(a). An inmate may appeal that loss "through the Bureau's Administrative Remedy Program." 28 C.F.R. § 523.43(b).

For most inmates who earn FSA Time Credits,[4] the Bureau of Prisons ("BOP") may apply the Time Credits towards an earlier transfer to supervised release or prerelease custody if the inmate: (1) has earned Time Credits in an amount that is equal to the remainder of the inmate's imposed term of imprisonment; (2) has shown through periodic risk reassessments either a demonstrated recidivism risk reduction or maintenance of a minimum or low recidivism risk during the term of imprisonment; and (3) had the remainder of his or her imposed term of imprisonment computed under applicable law (together the "General Requirements")). 18 U.S.C. § 3624(g); *see also* 28 C.F.R. § 523.44(b).

In addition to the General Requirements, the FSA imposes certain prerelease requirements. Specifically, the FSA states the BOP may apply earned FSA Time Credits towards prerelease custody only when an eligible inmate has maintained a minimum or low recidivism risk level through his or her last two risk assessments or had a petition to be transferred to prerelease custody approved by the Warden upon consideration that: (1) the prisoner would not be a danger to society if transferred to prerelease custody or supervised release; (2) the prisoner has made a good faith effort to lower their recidivism risk through participation in recidivism reduction programs or

---

[4] Deportable inmates may earn Time Credits but are not eligible to apply them. 18 U.S.C. § 3632(d)(4)(E); *see also* 28 C.F.R. § 523.44(a)(2).

productive activities; and (3) the prisoner is unlikely to recidivate (together ("Prerelease Requirements"). 18 U.S.C. § 3624(g); 28 C.F.R. § 523.44(c).

In addition to the General Requirements and Prerelease Requirements, the BOP may apply earned FSA Time Credits to early supervised release only when: (1) an eligible inmate has maintained a minimum or low recidivism risk through their last risk and needs assessment; (2) the sentencing court has imposed a term of supervised release after imprisonment; and (3) the application of FSA Time Credits would result in transfer to supervised release no earlier than 12 months before the date when transfer to supervised release otherwise would have occurred. 28 C.F.R. § 523.44(d).

The FSA also amended 18 U.S.C. Section 3624(b), such that most federal prisoners can earn up to 54 days of good conduct time credit for every year of the imposed sentence, subject to the BOP's determination that the prisoner displayed exemplary compliance with institutional regulations during that year ("Good Conduct Time Credits").[5] 18 U.S.C. § 3624(b)(1). Good Conduct Time Credits vest on the date when the inmate is released from custody. 18 U.S.C. § 3624(b)(2). Good Conduct Time Credits are tracked on an inmate's sentence computation as "Total GCT Earned and Projected," and "Total GCT Earned." (ECF Nos. 9 ¶ 13 and 9-1 (Ex. A) at 3.) The "Total GCT Earned" represents the actual amount of Good Conduct Times Credits earned at a specific snapshot in time. (ECF No. 9 ¶ 13.) The "Total GCT Earned and Projected" represents the total amount of Good Conduct Time Credits an inmate can potentially earn, less any time lost for disciplinary sanctions. (*Id.*) The BOP uses the "Total GCT Earned and Projected" to

---

[5] An inmate who is serving a term of imprisonment for less than one year, or for the duration of his life, is not eligible to earn Good Conduct Time Credits. 18 U.S.C. § 3624(b).

4

calculate an inmate's "Statutory Release Date Projected," and "Percent of Statutory Time Served." (ECF No. 9 ¶ 13.)

### C.   Mr. Jones's Credit Calculations

The record reflects that as of May 28, 2022—five days before Mr. Jones filed his Petition—Mr. Jones's "Total GCT Earned" was 648 days, his "Total GCT Earned and Projected" was 1,057 days, his "Statutory Release Date Projected" was August 26, 2026, and his "Percent of Statutory Time Served" was 74.8. (ECF No. 9-1 (Ex. A) at 3.) As of December 8, 2023, Mr. Jones's "Total GCT Earned and Projected" and "Statutory Release Date Projected" were the same, but his "Total GCT Earned" was 705 days and his "Percent of Statutory Time Served" was 83.7. (ECF No. 15-2 (Ex. B) at 3.)

In addition, as of May 28, 2022, Mr. Jones had earned 615 total days of FSA Time Credits. (ECF No. 10 ¶ 12.) As of December 2, 2023, Mr. Jones had earned 365 days of FSA Time Credits toward an early release, and 505 days toward prerelease community placement. (ECF Nos. 15 ¶ 3 and 15-2 (Ex. A) at 2.) Mr. Jones transitioned to home confinement on August 29, 2023. (ECF Nos. 14 at 1, 15 ¶ 5 and 15-3 (Ex. C) at 1.)

### D.   Mr. Jones's Petition

Mr. Jones filed his Petition on June 2, 2022. (ECF No. 1.) Mr. Jones seeks to have the BOP calculate and immediately apply his earned FSA and Good Conduct Time Credits to his percentage of statutory term served to correct what he claims is an inflated percentage of time left to serve on his sentence. (*Id.* at 2, 6-8.) The Court construes the Petition as requesting an order requiring the BOP to recalculate his statutory time served based on the calculation and application of allegedly previously unapplied FSA and Good Conduct Time Credits, and to adjust his percentage of statutory time served based on that recalculation. But because the Petition points to

5

no alleged mistake in credit calculation, the Court does not construe it as claiming the BOP calculated his FSA or Good Conduct Time Credits in a way that is erroneous.

Respondent initially asked the Court to dismiss Mr. Jones's Petition because: (1) Mr. Jones failed to exhaust his administrative remedies; (2) his requests that the BOP (a) calculate his FSA Time Credits; and (b) apply his Good Conduct Time Credits to his percentage of statutory time served are moot; and (3) his request that the BOP immediately apply is FSA Time Credits is premature. (ECF No. 7 at 13-22.) On December 7, 2023, the Court directed Respondent to file a letter updating the Court on Mr. Jones's projected release date and stating whether any change in that date affected Respondent's argument as to whether the application of Mr. Jones's FSA Time Credits was premature. (ECF No. 13.) Respondent timely filed a response stating that the issue is now moot because the BOP has applied Mr. Jones's FSA Time Credits to his sentence computation and prerelease confinement and updated his projected release date accordingly. (ECF No. 14 at 1-2.)

## DISCUSSION

### I. Exhaustion

"It is well settled that federal prisoners must exhaust their available administrative remedies before seeking federal habeas corpus relief under 28 U.S.C. § 2241." *Donnelly v. Fed. Bureau of Pris.*, Civ. No. 10-3105 (DWF-JSM), 2012 WL 2357511, at *3 (D. Minn. May 30, 2012) (collecting cases), *report and recommendation adopted*, 2012 WL 2357490 (D. Minn. June 20, 2012). "If a prisoner deprives prison officials and the courts of the benefits of the administrative remedies process, by failing to pursue his administrative remedies in a proper and timely manner, his claims are procedurally defaulted." *Id.* (collecting cases). The Court will only waive the exhaustion requirement if a prisoner can show "that some external impediment prevented him from

exhausting his administrative remedies," *id.* at 4, or that any attempt to exhaust his administrative remedies would be an entirely futile exercise. *See Aguilar v. United States*, Civ. No. 15-487-SRN-JSM, 2015 WL 5719166, at *2 (D. Minn. Sept. 29, 2015) (*citing Elwood v. Jeter,* 386 F.3d 842, 844 n.1 (8th Cir. 2004)).

Mr. Jones did not file any administrative claim related to his FSA or Good Conduct Time Credits. (ECF No. 8 ¶ 13.) The record reflects that Mr. Jones has filed or attempted to file administrative claims related to other issues eight other times (ECF No. 8-1), so he is clearly familiar with the process. The only rationale Mr. Jones provides for his failure to exhaust his administrative remedies is that he spoke with BOP staff "informally" and they told him there was nothing they could do. (ECF No. 1 at 2.) But the Court cannot conclude solely from this naked assertion that an attempt to exhaust his remedies would be futile, or that he was prevented from seeking administrative relief by some external impediment. The Court accordingly recommends dismissal of Mr. Jones's petition for failure to exhaust administrative remedies.

**II.    Mootness**

The Court also recommends dismissing Mr. Jones's Petition because his requests are moot. There must be an actual, ongoing case or controversy for a federal court to have subject matter jurisdiction. U.S. Const. art. III, § 2; *Potter v. Norwest Mortgage, Inc.*, 329 F.3d 608, 611 (8th Cir. 2003). "When, during the course of litigation, the issues presented in a case 'lose their life because of the passage of time or a change in circumstances … and a federal court can no longer grant effective relief,' the issue is considered moot." *Ali v. Cangemi*, 419 F.3d 722, 723 (8th Cir. 2005) (quoting *Haden v. Pelofsky*, 212 F.3d 466, 469 (8th Cir. 2000)). When a case becomes moot, a federal court cannot "address the merits because any opinion [the court] would issue would be merely advisory." *In re Search Warrants Issued in Connection with Investigation of S. Cent.*

7

*Career Ctr., W. Plains, Mo.* ("In re Search Warrants"), 487 F.3d 1190, 1192 (8th Cir. 2007) (citing *Haden*, 212 F.3d at 469).

The Court should not dismiss a petition as moot, however, if any of the following exceptions applies: "(1) secondary or 'collateral' injuries survive after resolution of the primary injury; (2) the issue is deemed a wrong capable of repetition yet evading review; (3) the defendant voluntarily ceases an allegedly illegal practice but is free to resume it at any time; or (4) it is a properly certified class action suit." *Ahmed v. Sessions*, Civ. No. 16 -2124 (DSD/HB), 2017 WL 3267738, at *2 (D. Minn. July 11, 2017) (internal citation omitted), *report and recommendation. adopted*, 2017 WL 3268176 (D. Minn. July 31, 2017); *see also, e.g.*, *Scheper v. Rios*, Civ. No. 19-402 (MJD/ECW), 2020 WL 4060729, at *3 (D. Minn. June 5, 2020), *report and recommendation adopted*, 2020 WL 4059875 (D. Minn. July 20, 2020).

Mr. Jones asks the Court to require the BOP to calculate and apply his Good Conduct Time Credits to his percentage of statutory time served. (ECF No. 1 at 7.) But the BOP has already performed this calculation and determined he has 1,057 Good Conduct Time Credits. The BOP has also already applied his 1,057 Good Conduct Time Credits to his percentage of statutory time served, resulting in a projected statutory release date of August 26, 2026. (ECF Nos. 9-1 (Ex. A) at 3 and 15-2 (Ex. B) at 3.)

Mr. Jones also asks the Court to require the BOP to "implement and credit" his FSA Time Credits. (ECF No. 1 at 8.) To the extent he seeks an order requiring the BOP to calculate his FSA Time Credits earned, as of May 28, 2022 the BOP calculated he had earned 615 days of FSA Time Credits. (ECF No. 10 ¶ 12.) And as of December 2, 2023, the BOP calculated he had earned 365 days of FSA Time Credits towards an early release, and 505 days towards prerelease community

placement. (ECF Nos. 15 ¶ 3 and 15-2 (Ex. A) at 2.) The BOP thus has already calculated his FSA Time Credits to the extent such credits have been earned.

Mr. Jones's request that the BOP apply his FSA Time Credits to his sentence computation and prerelease confinement is also now moot. The application of Mr. Jones's FSA Time Credits to his sentence will not change his computed percentage of statutory time served. (*See* ECF No. 10 at ¶ 11.) However, his statutory projected release date of August 26, 2024 includes consideration of a twelve-month credit for his successful completion of the Residential Drug Abuse Program under 18 U.S.C. § 3621(e), and the maximum 365 days of FSA Time Credits he can apply toward early transfer to supervised release. (ECF Nos 15 ¶ 4 and 15-2 (Ex. B) at 3.) Moreover, Mr. Jones's 505 days of FSA Time Credits towards prerelease community placement have also now been applied, and he has been released on home confinement since August 29, 2023. (ECF Nos. 15 ¶ 5 and 15-3 (Ex. C) at 1.)

The Court cannot grant effective relief because the BOP has already satisfied Mr. Jones's requests and no exception to mootness applies. First, there are no cognizable collateral consequences. "Collateral consequences" include restrictions on the right to engage in certain types of businesses or professions, the right to vote, the right to own a gun, and the right to serve on a jury. *Spencer v. Kenma*, 523 U.S. 1, 9 (1998). "However, a habeas petitioner cannot rely on the collateral consequences of his conviction to save his case from mootness if he is not actually challenging the validity of his conviction." *Tejado-Hurtado v. Fikes*, Civ. No. 21-2766 (JRT/LIB), 2022 WL 291006, at *2 (D. Minn. May 26, 2022) (quoting *Woodward v. Fondren*, Civ. No. 8-194 (ADM/JJK), 2008 WL 5214396, at *2 (D. Minn. Dec. 12, 2008), *report and recommendation adopted*, 2022 WL 2906199 (D. Minn. July 22, 2022)). Mr. Jones does not challenge the validity

9

of his conviction or the imposition of his sentence. Rather, he challenges the application of his release time credits. This exception thus does not apply.

Second, the exception for "a wrong capable of repetition evading review," applies only "if the matter is too short in duration to be fully litigated before it ends or expires and there is a reasonable expectation that [the petitioner] will be subjected to the same action again." *In re Search Warrants,* 487 F.3d at 1193. That exception does not apply here because there is nothing left to litigate, since the BOP has already applied Mr. Jones's FSA Time credits and transferred him to home confinement. *Scheper*, 2020 WL 4060729, at *3. There is also no indication Mr. Jones will be subject to the same alleged wrong again. Any return to a prison facility would be based on new facts and circumstances for which he would be able to bring a new habeas petition.

The third and fourth exceptions to mootness similarly do not apply: there is nothing in the record to suggest the BOP released Mr. Jones simply to prevent the Court from reviewing it; and Mr. Jones did not bring his Petition on behalf of a class of individuals. (*See* ECF No. 1.) Because Mr. Jones's case is now moot and none of the exceptions to mootness apply, the Court lacks subject matter jurisdiction over his Petition. The Court recommends for these reasons that his Petition be denied as moot and this matter be dismissed without prejudice.

## CONCLUSION

The Court recommends that Mr. Jones's Petition be denied because he failed to exhaust his administrative remedies and because his requests are moot.

## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMEND THAT**:

1. Mr. Jones' Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (ECF No. [1]) be **DENIED**; and

2. This matter be **DISMISSED WITHOUT PREJUDICE**.

Dated: December 29, 2023

*s/ Dulce J. Foster*
DULCE J. FOSTER
U.S. Magistrate Judge

## NOTICE

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).